PENTLAND *v.* JACOBSON.

1. SALES—EVIDENCE—WARRANTIES—CONTRACTS—INSPECTION.

    Plaintiff sold defendant a quantity of potatoes which were delivered and were later found to be frozen. A tender back was made by the defendant, and plaintiff brought an action for the purchase price; defendant claimed that plaintiff had expressly represented and warranted that the potatoes were in fit condition for use. The testimony showed that at the time of delivery of the first lot the defendant found a number of pounds of frozen potatoes and that the plaintiff said that the rest were all right, that a few had been scattered about and been frozen in his cellar. The court submitted the case to the jury on the theory that if there was no express warranty defendant might rely upon the implied warranty. *Held*, that the testimony as to the representation of the plaintiff, though uncertain, or meagre, was sufficient to support a verdict for the defendant.[1]

2. SAME—IMPLIED WARRANTY—INCONSISTENT WITH EXPRESS WARRANTY.

    Under Act No. 100, Pub. Acts 1913, § 15, and subd. 6, an express warranty does not preclude the existence of and re-

---

[1]On implied warranty of fitness of property bought for special purpose, see notes in 22 L. R. A. 187, 15 L. R. A. (N. S.) 868, 31 L. R. A. (N. S.) 783; 34 L. R. A. (N. S.) 737.

liance upon an implied warranty unless the two are inconsistent.

3. SAME—INSTRUCTIONS.

The court did not err in charging the jury that if defendant did not examine the potatoes he was entitled to rely upon the implied warranty of fitness or quality, and upon the statement made by the plaintiff that it would be his duty, after finding defects in the potatoes, to notify plaintiff within a reasonable time, that what was a reasonable time would be for the jury, that if he made no examination but relied upon the warranty that the potatoes were fit for food and were merchantable, afterwards finding that they were not merchantable or fit for food, and notified plaintiff of the fact within a reasonable time, he would not be required to pay for the potatoes.

Error to Luce; Fead, J. Submitted October 18, 1915. (Docket No. 152.) Decided December 21, 1915.

Assumpsit by Moses Pentland against John K. Jacobson for the purchase price of certain potatoes. Judgment for defendant. Plaintiff brings error. Affirmed.

*Brown & Brown,* for appellant.

*Warner & Sullivan,* for appellee.

KUHN, J. In this action the plaintiff seeks to recover for potatoes delivered to the defendant in accordance with a verbal contract entered into by the parties; 288¼ bushels of potatoes were actually delivered, the value of which was agreed upon to be $151.20. The defendant contested the action brought for this amount because, it is his claim, there was an express warranty as to the condition of the potatoes, whereas, as a fact, they were frozen at the time of delivery. Upon the discovery of the defective condition of the potatoes they were tendered back by the defendant, and the issue thus formed was submitted to a jury,

who returned a verdict of no cause of action, upon which judgment was duly entered.

It is the contention of the plaintiff and appellant that the record shows conclusively that, if the potatoes were frozen, they were frozen after delivery, and that the defendant accepted the first load after inspection, and the other three loads without using the opportunity to inspect. It appears that, when the first load of 113 bushels was delivered under the contract, in the presence of both parties, the defendant culled out 35 pounds of frozen potatoes and as to what occurred at that time he testified as follows:

"I said I was a little afraid of those potatoes, picking out as many as that, just rolling them in. He recommended them to be O. K. He said some potatoes got scattered around and got into the sacks; some that had been frozen in his cellar got into the sacks.

"Q. What did he say at that time about the rest of them, whether or not they were all right?

"A. Well he didn't say anything about the rest of them, except that he put those in."

On redirect examination he testified:

"Q. Now, I understood you to say that when the first load was delivered, and you discovered that there was some frozen potatoes there, that Mr. Pentland told you that was a few that had gotten in that was frozen on top, or on one end?

"A. That is what he said.

"Q. And that the rest were all right?

"A. That is what he said.

"Q. Whether or not you relied on his statement to that effect?

"A. I relied on his statement and had his word for the potatoes. That is the reason why I didn't cut open the potatoes and examine them carefully to see whether they were frozen or not."

The case was submitted to the jury upon the theory that an express warranty had been established, and also that, if they found no such express warranty had

been established, an implied warranty might be relied upon by the defendant. This seems to be sanctioned by the uniform sales law (subdivision 6 of section 15 of Act No. 100, Pub. Acts 1913), providing that:

"An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

Plaintiff contends that the testimony of the defendant with reference to the express warranty is conflicting, and that the question should not have been submitted to the jury to allow them to speculate as to this feature of the case. It is true that the testimony with reference thereto is somewhat uncertain and meager, but we are of the opinion that there was sufficient evidence to submit the question to the jury under instructions which on examination are found to be appropriate and correct. The jury were in a position to notice the manner in which this testimony was given by the witness, and thus determine its credibility. It is also significant in this connection that the plaintiff, in testifying with reference to the contract, said:

"I understood the contract called for good, merchantable potatoes, and did not expect him to pay for anything else, and do not expect him to now. If he didn't get good potatoes, I don't want him to pay for them."

Subdivision 1 of section 15 of said Act No. 100 provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill and judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

Subdivision 3 provides:

"If the buyer has examined the goods, there is no

implied warranty as regards defects which such examination ought to have revealed."

The court charged the jury as follows:

"If, on the other hand, he did not examine the potatoes, then he is entitled to rely upon the implied warranty and upon the statement made by the plaintiff, and it would be his duty, after having found there were defects in the potatoes, if he so found, to notify the plaintiff within a reasonable time. If he did not notify the plaintiff within a reasonable time, and what is a reasonable time is a question for you to determine from the evidence, then he would be held to have to pay for the potatoes. If, upon the other hand, he made no examination, but relied upon the warranty that they were fit for food, that they were merchantable, and afterwards found that they were not proper, were not merchantable, and within a reasonable time notified the plaintiff of that fact, then he would not be required to pay for the potatoes."

After carefully examining the evidence in this record, we are of the opinion that the questions involved were submitted to the jury under proper instructions, and that there is sufficient evidence to justify the verdict reached by the jury.

The judgment is affirmed.

BROOKE, C. J., and PERSON, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.